UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ERICK BAILEY, | ) | |
|     Petitioner, | ) ) ) | |
| v. | ) ) | No. 3:06-0545 |
| WAYNE BRANDON, WARDEN, | ) ) | Judge Trauger |
|     Respondent. | ) ) | |

## MEMORANDUM

### I. INTRODUCTION

    The petitioner, Erick Bailey, is a prisoner in the Turney Center Industrial Prison ("Turney Center") in Only, Tennessee. He brings this *pro se* action under 28 U.S.C. § 2254, naming Wayne Brandon, Warden at Turney Center, as the respondent.

### II. FACTUAL BACKGROUND

    On December 27, 1998, Timothy Chandler left the house that he shared with his girlfriend, Yolanda Foxx, to rent a video and buy some food for their children and other members of Foxx's family. (Docket Entry No. 10, Add. 2, pp. 13-14)[1] Chandler was driving Foxx's gold, early-nineties Chevrolet Camaro. (Add. 2, pp. 13-14) The Camaro had a custom stereo system and custom chrome wheels. (Add. 2, pp. 16-17)

    A computer receipt, entered into evidence through Hollywood Video employee, Dawn Northington, established that Chandler rented a video and bought some popcorn at 7:24 p.m. from Hollywood Video on Gallatin Road. (Add. 2, pp. 8-9) A surveillance video, entered into evidence through gas station employee, Tammy Taylor, established that Chandler prepaid for ten dollars ($10.00) worth of gasoline at 7:48 p.m. at the Aztec gas station and convenience store on Dickerson Road, and that he did so with ten one-dollar bills. (Add. 2, pp. 48-49) The surveillance video also

---

[1] The addenda were filed under Docket Entry No. 10. Hereinafter, reference to the addenda will use the following convention: (Add. No. X), where "X" is the addendum to which reference is made. No further reference to Docket Entry No. 10 will be made in this Memorandum.

established that, after paying for the gasoline, Chandler left the convenience store through the back door. (Add. 2, p. 48) Foxx testified that Chandler always used the pumps in the back of the Aztec station. (Add. 2, p. 18)

Erick Bailey ("Bailey"), his identical twin brother, Derick Bailey ("Derick"), and two cousins, Alvin Hall and Jevon Garrison, were driving around in Derick's 1988 Cadillac. (Add. 2, pp. 60) Hall testified that, after passing the Aztec station, Derick turned around in a gas station further down the road, and drove to the Taco Bell located next door to the Aztec station. (Add. 2, p. 64) Derick pulled around to the rear of the Taco Bell, where Bailey got out of the car and, cutting through shrubs that separated the Taco Bell and Aztec properties, went into the Aztec convenience store through the back door. (Add. 2, pp. 51, 65)

Derick then pulled around to the front of the Aztec station. (Add. 2, p. 66) Hall testified that he went inside the Aztec convenience store where he saw Bailey, but that Bailey went out the back door in the length of time that it took Hall to purchase a drink. (Add. 2, p. 68) The evidence established that Bailey, wearing a hat and a brown jacket, was in the Aztec convenience store at or about the same time as Chandler, and that Bailey went out the back door after Chandler did. (Add. 2, pp. 50-51) The Aztec employee, Taylor, who was on duty at the time identified the man who followed Chandler outside as "one of the twins." (Add. 2, p. 49)

Hall testified that he left the convenience store by the front door and got back in the Cadillac, but that Bailey did not return. (Add. 2, pp. 68-69) Hall also testified that, when Jevon "heard something," Derick drove the Cadillac around to the back of the Aztec station where Hall saw a Camaro driving away with its headlights off. (Add. 2, p. 69) Derick followed the Camaro for several miles, the Camaro's lights remaining off, until Hall finally asked that he and Jevon be taken home. (Add. 2, pp. 69-72) Hall testified that he did not see Bailey again after Derick let them out in the vicinity of Westchester and Bellshire Drives. (Add. 2, p. 74)

2

Mary Ann Fenter testified that she pulled around to the back of Aztec station between 9:45 and 10:00 p.m. on her way home from work.[2] (Add. 2, pp. 24-25) As she did, she saw a black man, wearing a "darker tan" jacket and a hat straddling another black man who was lying motionless on the ground. (Add. 2, pp. 25, 35) The former held the latter by the jacket with both hands. (Add. 2, p. 25) When the man standing saw Fenter, he got into a "champagne" colored car and drove off in a manner that she said she "wouldn't call speeding, but . . . wouldn't call it slow." (Add. 2, pp. 26, 31) Fenter then went into the convenience store and advised Taylor that there was someone lying on the ground in the back and to call the police. (Add. 2, p. 27) When the police arrived, Taylor identified the man on the ground as Chandler. (Add. 2, pp. 53-54)

Dr. Bruce Levy, the County Medical Examiner for Metropolitan Nashville-Davidson County, and Medical Examiner for the State of Tennessee, testified that Chandler suffered a single gunshot wound to the chest fired from a range of six inches or less. (Add. 2, p. 220) The bullet struck Chandler in the heart and continued into the abdomen where it struck his liver, aorta and then his spine as it exited. (Add. 2, p. 214) Chandler died on the operating table. (Add. 2, p. 213)

The gold Camaro was found later that same evening about five miles from the Aztec station. (Add. 2, pp. 38, 87) The wheels had been removed, the stereo taken, and an attempt had been made to set the car afire. (Add. 2, pp. 37, 87, 135-136) A single fingerprint positively identified as Bailey's was recovered from a propane tank found in the trunk of the Camaro. (Add. 2, pp. 147, 151, 185-189)

Bailey was apprehended later that evening with nine hundred fifty dollars ($950.00), including one hundred sixty-six one-dollar bills, held together with a rubber band. (Add. 2, p. 114)

---

[2]Fenter's testimony as to the time was in stark contrast to the time established by other evidence adduced at trial, *e.g.*, the Aztec surveillance video and the testimony of Investigator Tim Matthews who testified that he was dispatched to the Aztec station at approximately 8:00 p.m. (Add. 2, pp. 48-49, 100)

Chandler's girlfriend, Foxx, testified that Chandler always carried his currency with a rubber band around it. (Add. 2, pp. 19-20) Bailey admitted to having been at Aztec station earlier and to having heard a gunshot. (Add. 2, p. 116)

Derick was taken into custody "within a day or two . . . ." (Add. 2, p. 117) Derick gave the police permission to search his Cadillac. (Add. 2, p. 117) On inspection, the police observed that the back seat of Derick's Cadillac was dirty and muddy and there appeared to be the impression of a tire on the leather upholstery. (Add. 2, pp. 118, 154-159) Hall had testified previously that the backseat, where he had been riding, had not been dirty or muddy. (Add. 2., p. 74) The tire impression in the upholstery was traced to a tire that Chandler had purchased from the Dunlap and Kyle Tire Company on July 1, 1998. (Add. 2, pp. 146-147, 171-178)

### III. PROCEDURAL BACKGROUND

The Davidson County Grand Jury returned a two-count indictment against Bailey on May 14, 1999: Count 1, felony murder; Count 2, premeditated first-degree murder. (Add. 1, pp. 1-4)[3] Bailey was tried by a jury March 19-21, 2001 (Add. 2), and he was convicted on both counts.[4] (Add. 1, p. 17; Add. 2, TR., pp. 278-280) Bailey was sentenced to life for each conviction, the sentence on Count 2 merged with the sentence on Count 1. (Add. 1, pp. 18-19) Judgment entered on March 21, 2001. (Add. 1, pp. 18-19) Bailey filed a motion for a new trial on April 18, 2001 which was denied on June 22, 2001. (Add. 1, pp. 20-21; Add. 2, Motion)[5]

---

[3] The page numbers in Addendum No. 1 are handwritten in the lower left corner of the pages.

[4] Bailey's twin brother Derick also was tried and convicted for this crime. *See State v. Derick Bailey*, No. 2001-02411-CCA-R3-CD, 2003 WestLaw 1877100 (Tenn. Crim. App.), *per. app. denied*, (Tenn. 2003); *Derick Bailey v. State*, No. M2004-02434-CCA-R3-PC, 2005 WestLaw 2205901 (Tenn. Crim. App.), *per. app. denied*, (Tenn. 2006).

[5] The respondent has failed to comply here, and elsewhere, with LR7.03(a), Local Rules of Court which requires that "[a]ll exhibits to pleadings . . . be paginated progressively beginning with the principal document, and continuing through the last page of the document, including exhibits." The transcript from Bailey's motion for a new trial is located in the last five pages of Addendum 2.

Bailey filed a notice of appeal on August 17, 2001. (Add. 1, p. 22) He raised a single issue on direct appeal: Whether the evidence was sufficient to support his convictions. (Add. 3, pp., 2, 8-12) On June 19, 2002, the Court of Criminal Appeals "reversed and vacated the first-degree murder conviction on count two and impose[d] in lieu thereof a conviction of second-degree murder," the count to remain merged with the felony murder conviction. (Add. 5, pp. 6-7) The Court of Criminal Appeals affirmed the judgment of the trial court in all other respects. (Add. 5, p. 7) Bailey's application to appeal in the Tennessee Supreme Court was denied on November 12, 2002. (Add. 6, 8)

Bailey filed a *pro se* petition for post-conviction relief on January 13, 2003, and counsel was appointed. (Add. 9, pp. 5-16) Bailey filed an amended petition on December 15, 2003. (Add. 9, pp. 21-27) A post-conviction evidentiary hearing was held on November 10, 2004 (Add. 10), following which his petition was denied on December 20, 2004 (Add. 9, pp. 37-41). Bailey filed a notice of appeal on January 13, 2005. (Add. 9, pp. 42-43)

On appeal from the judgment of the post-conviction court, Bailey raised the following issues:

> 1) Whether defense counsel were ineffective for not obtaining an expert to assist with the fingerprint evidence;
>
> 2) Whether defense counsel were ineffective for not objecting to testimony at trial that the fingerprint on the propane tank matched his; and
>
> 3) Whether defense counsel were ineffective for not bringing discrepancies in the testimony of two of the State's witnesses to the jury's attention.

(Add. 11, pp. 1, 8-11) The Court of Criminal Appeals affirmed the judgment of the post-conviction court on October 7, 2005, after which the Tennessee Supreme Court denied Bailey's application for permission to appeal on February 6, 2006. (Add. 13, p. 7; Add. 16)

5

Bailey filed his petition for federal *habeas corpus* relief on April 25, 2006. Rule 3(d), Rules – Section 2254 Cases. Bailey raises the following claims in his petition:

1) Whether defense counsel were ineffective for not obtaining an expert to assist with the fingerprint evidence;

2) Whether defense counsel were ineffective for not objecting to testimony at trial that the fingerprint on the propane tank matched his; and

3) Whether, given questions pertaining to the fingerprint evidence, the evidence was sufficient to find him guilty beyond a reasonable doubt.

(Docket Entry No. 1, ¶ 12, pp. 6-11) The respondent filed an answer on August 25, 2006 (Docket Entry No. 6), after which Bailey filed a response in opposition on September 7, 2006 (Docket Entry No. 11).

## IV. ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). *See Martin v. Mitchell*, 280 F.3d 594, 602 (6th Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65. Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Under the AEDPA, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### A. Ineffective Assistance of Counsel for Not Obtaining the Assistance of a Fingerprint Expert

Bailey argues that defense counsel provided ineffective assistance because they did not obtain the assistance of a fingerprint expert. (Docket Entry No. 1, ¶ 12, Ground One, pp. 6-7) The petitioner asserts that he was prejudiced by defense counsels' failure to obtain a fingerprint expert because the jury was left to rely on the testimony of the State's expert witness. (Docket Entry No. 1, ¶ 12, Ground One, pp. 6-7)

The respondent argues first that the Court of Criminal Appeals correctly identified *Strickland*

7

*v. Washington*, 466 U.S. 668 (1984) as controlling when ineffective assistance of counsel is alleged. (Docket Entry No. 6, p. 11) The respondent argues further that Bailey has not established that the Court of Criminal Appeals decision on this issue "was contrary to, or an unreasonable application of, existing Supreme Court precedent . . . ." (Docket Entry No. 6, p. 12)

To prevail on a claim of ineffective assistance of counsel, a *habeas* petitioner must show deficient performance and prejudice. *See Bell*, 535 U.S. at 694-95. Trial counsels' performance is deficient when it falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 686-87; *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In determining whether an attorney performed in an objectively unreasonable manner, courts employ "highly deferential" scrutiny. *Strickland*, 466 U.S. at 689. To satisfy the prejudice requirement, an ineffective assistance claimant "must show that there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*), *cert. denied*, 508 U.S. 975 (1993)).

The record shows that the Court of Criminal Appeals correctly identified *Strickland* as controlling when ineffective assistance of counsel is alleged. (Add. 13, p. 5) In addressing this particular issue, the Court of Criminal Appeals wrote the following regarding the post-conviction proceedings:

> In denying the petition for post-conviction relief, the post-conviction court noted that[:]
>
> > the evidence against the petitioner and his brother was quite extensive

8

and damning, as it clearly illustrated that the petitioner was the trigger man in the incident. Also, one witness called by the state was a man who worked in a tire shop where the victim had been the only person in the area to specially order a certain type of tire, the print of which was found on the back seat of the vehicle driven by the petitioner's brother. There is no proof to show that the employment of a fingerprint expert by the petitioner would have produced any different result in the outcome of this matter. In fact, such analysis may have only been similar to that which was submitted by the prosecution. Ample evidence of other nature existed to lead the jury to the conclusion that the petitioner was involved in the commission of the crime. The petitioner has not proven the existence of any prejudice with respect to this contention and the issue is therefore without merit.

> From our review of the record, we can find no evidence to preponderate against the findings of the post-conviction court. At the post-conviction hearing, the petitioner summarily complained that counsel failed to procure an independent fingerprint analysis. The petitioner presented no proof that he was prejudiced by counsel's failure to secure independent testing; specifically, he did not produce any expert testimony at the post-conviction hearing to show that the State's analysis was flawed. Therefore, we conclude that he did not meet his burden of demonstrating counsel's ineffectiveness in this regard.

(Add. 13, pp. 5-6)

At the post-conviction evidentiary hearing, Bailey mounted an ineffective assistance challenge based on the fingerprint evidence adduced at trial, calling Larita Marsh who testified at trial as the State's fingerprint expert. (Add. 10, pp. 5-7, 14-21) Although Bailey argued that defense counsel provided ineffective assistance of counsel because they did not retain an independent fingerprint expert, and because they did not challenge the State's expert witness, a fair reading of the post-conviction evidentiary hearing transcript shows that, although it might have been the better practice to have done so, Bailey failed to establish on post-conviction that he was prejudiced by defense counsels' representation on this point. More particularly, Bailey failed to demonstrate that, even if defense counsel had retained a fingerprint expert, and even if they had challenged the State's expert, it would have made any difference given the other evidence discussed *supra* at pp. 1-4.

Because the record supports the Court of Criminal Appeals' factual findings with respect to

9

this claim, those findings are entitled to the presumption of correctness. Moreover, given that the Court of Criminal Appeals' determination of this issue was consistent with *Strickland*, its determination was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, this claim is without merit.

Certificate of Appealability

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court has independently determined that the petitioner has not made a substantial showing of a denial of a constitutional right with respect to this claim. Therefore, a COA will not issue on this claim.

B. Ineffective Assistance of Counsel for Not
Challenging Fingerprint Evidence
Introduced at Trial

Bailey claims that defense counsel were ineffective for not objecting to the introduction of the fingerprint recovered from the propane tank because the State's fingerprint expert did not use charts, illustrations or other presentation aids during her testimony. (Docket Entry No. 1, ¶ 12, Ground Two, pp. 7-9)

The respondent argues again that the Court of Criminal Appeals correctly identified *Strickland* as controlling when ineffective assistance claims are raised. (Docket Entry No. 6, p. 11) The respondent argues further that Bailey has not established that the Court of Criminal Appeals' decision on this issue "was contrary to, or an unreasonable application of, existing Supreme Court precedent . . . ." (Docket Entry No. 6, p. 12)

10

In addressing this issue, the Court of Criminal Appeals made the following observation pertaining to the post-conviction proceedings in its opinion:

> Additionally, we note that the petitioner did not present any proof that he was prejudiced by counsel's failure to seek some type of visual aid to explain the testimony of Marsh. The post-conviction court found:
>
>> Marsh, the state's expert witness, testified at trial that the prints on the propane tank matched those of the petitioner. She compared the prints of the petitioner to those found on the tank and drafted a report of her findings, which was entered into evidence as an exhibit. Ms. Marsh testified that she could have made a photograph to show the matching points, but that it had never been done in past trials. She relied on the report she had made and was adamant that the right thumb print was the same as the petitioner's. The representation by counsel in this aspect was not deficient, as any objection made by counsel would not have been sustained on account that Ms. Marsh was testifying as to her opinion of the analysis of the fingerprints under Rule 702 of the Tennessee Rules of Evidence. We find no evidence to preponderate against the post-conviction court's findings.
>
> We find no evidence to preponderate against the post-conviction court's findings.

(Add. No. 13, pp. 5-6)

For the reasons addressed previously, *supra* at pp. 8-10, Bailey has failed to establish that he was prejudiced because defense counsel did not challenge the manner in which the State introduced the fingerprint evidence at trial. For the reasons previously stated, *supra* at pp. 9-10, the Court of Criminal Appeals' factual determinations pertaining to this issue are entitled to the presumption of correctness, and its determination of this claim under *Strickland* was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, this claim is without merit.

## Certificate of Appealability

As previously explained, *supra* at p. 10, where, as here, the district court denies a ground for relief on the merits in a *habeas corpus* action, a COA may issue only if the applicant has made a

11

substantial showing of the denial of a constitutional right. The court has conducted an individualized analysis of this claim, and finds that Bailey has not made a substantial showing of the denial of a constitutional right regarding this claim. Therefore, a COA will not issue on this claim.

### C. Sufficiency of the Evidence

Bailey asserts that the evidence was insufficient for the jury to find him guilty beyond a reasonable doubt because "the nonexistent of the allege propane bottle and the identity of the allege f[]ingerprint is in question." (Docket Entry No. 1, ¶ 12, Ground Three, pp. 9-10) Although not entirely clear, Bailey's argument appears to be that the fingerprint evidence was insufficient to convict him beyond a reasonable doubt.

The respondent argues that this ground for relief is procedurally defaulted because Bailey's sufficiency of the evidence claim on direct appeal was not raised in the context of fingerprint evidence. (Docket Entry No. 6, p. 13) More particularly, the respondent argues that Bailey's sufficiency of the evidence claim on direct appeal was grounded in the "assertion that the circumstantial evidence adduced at trial failed to exclude every reasonable hypotheses except that the defendant was the [petitioner] was the person who shot the victim." (Docket Entry No. 6, p. 13)

Bailey counters in his response in opposition to the respondent's answer that this claim was raised on post-conviction, referring in particular to page 13 of the evidentiary hearing transcript. (Docket Entry No. 11, p. 2) A review of the transcript of the proceedings at the post-conviction evidentiary hearing reveals that the fingerprint evidence obtained from the propane bottle was, indeed, mentioned at the post-conviction evidentiary hearing. (Add. 10, p. 13)

The AEDPA places notable restrictions on a federal court's ability to grant *habeas corpus* relief to state prisoners. First, federal *habeas corpus* courts may only consider claims that *habeas* a petitioner has previously raised before the state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). Claims that have not been raised in state court are deemed

12

unexhausted and ordinarily are dismissed, without prejudice, so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385 (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then that claim is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman v. Thompson*, 501 U.S. 722, 752-753 (1991). A claim also is procedurally defaulted where that claim was presented to the state court, but the court, rather than reaching the merits of the claim, relied on an independent and adequate state ground, such as a state procedural rule barring review of the claim, in deciding the issue. *Id.* at 734-735.

If a claim is procedurally defaulted, then federal *habeas corpus* review is prohibited unless the petitioner demonstrates both "cause" <u>and</u> "prejudice" for his failure to raise the claim in state court while state court remedies were available, or that a miscarriage of justice will result if the claim is not reviewed. *Alley*, 307 F.3d at 386; *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477 U.S. at 488 (citations omitted); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, but it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)). Finally, to demonstrate a "miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of

13

someone who actually is innocent. *Murray*, 477 U.S. at 496. This exception applies only in "extraordinary cases," *Id*., and requires a petitioner to show that he is "actually innocent," *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

"These rules apply both to entirely new legal claims and to new factual bases for relief; for a claim to be considered exhausted, the petitioner must have 'fairly presented' to the state courts the 'substance of his federal habeas corpus claim.'" *Alley*, 307 F.3d at 386 (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982))(internal citations omitted); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal courts."). "Although 'bits of evidence' which were not before the state courts will not render a claim unexhausted, where a federal *habeas* petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different posture, the state courts must be given the opportunity to consider the evidence." *Sampson v. Love*, 782 F.2d 53, 57 (6th Cir. 1986)(quoting *Jones v. Hess*, 681 F.2d 688, 691 (10th Cir. 1982)(internal citations omitted)).

The record shows that Bailey raised his sufficiency of the evidence claim on direct appeal when he should have raised it. (Add. 3) In his brief on appeal, Bailey makes the following arguments in the context of evidentiary sufficiency: 1) the State's proof regarding who shot the victim was entirely circumstantial (Add 3, p. 9); 2) the State's proof did not exclude every other hypothesis except that of guilt (Add. 3, p. 9); 3) the State's proof did not exclude the possibility that someone else murdered the victim (Add. 3, p. 10); 4) there was no evidence that Bailey and the victim knew one another (Add. 3, p. 11); and 5) the police never found the murder weapon (Add. 3, p. 11). Nowhere in Bailey's brief on direct appeal is the word "fingerprint" even mentioned, much less in the context that the fingerprint evidence was insufficient to support his conviction.

As it is clear from the record that the state courts have never been afforded the opportunity

14

to address this claim in the context of the fingerprint evidence, this claim is unexhausted. The next question is whether it is procedurally defaulted as well.

Tennessee's waiver rule in effect at the time that he filed his notice of appeal provided the following:

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. § 40-30-206(g) (2001). Because Bailey did not raise this issue on direct appeal when he should have, and because this claim does not fall under either of the two exceptions noted above, this claim is waived and, as such, it is procedurally defaulted under Tennessee law. Having ascertained that this claim is procedurally defaulted under state law, the next question is whether it is procedurally defaulted for purposes of federal *habeas corpus* review.

Although exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine intended to promote comity between the states and the federal government by giving the states the initial opportunity to pass on and correct alleged violations of a prisoner's federal rights. *Granberry v. Greer*, 481 U.S. 129, 133 (1987). As previously noted, *supra* at pp. 13-15, for claims that are procedurally defaulted under state law to be considered by the district court, the petitioner is required to satisfy both prongs of the two-part cause and prejudice test or show that a substantial injustice will occur if the court does not consider his claims.

15

Case 3:06-cv-00545   Document 12   Filed 11/13/06   Page 15 of 16 PageID #: 82

Bailey does not argue cause and prejudice, nor does he allege that he actually is innocent. Rather, he argues only that he exhausted this claim in state court because the subject was mentioned in passing during the post-conviction evidentiary hearing. (Docket Entry No. 11, p. 2) Because Bailey has not established cause and prejudice, and because he does not argue that he actually is innocent, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.

### Certificate of Appealability

Where, as here, a district court denies a *habeas corpus* petition on procedural grounds without reaching the merits of the petitioner's underlying constitutional claims, a certificate of appealability will issue only under the following conditions: 1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right"; and 2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. The court has conducted an individualized analysis of the foregoing claim and finds that jurists of reason would not find it debatable that the court was correct in its procedural ruling with respect to this claim. Therefore, a COA will not issue as to this claim.

### V. CONCLUSION

As reasoned herein, Bailey is not entitled to federal *habeas corpus* relief on the grounds raised. Accordingly, Bailey's petition for federal *habeas corpus* relief will be denied and this action dismissed. Moreover, for reasons stated herein, a COA will not issue as to any of Bailey's claims.

An appropriate Order will be entered.

Aleta A. Trauger
United States District Judge